**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Huel Heavy Metal Litigation | Case No: 1:25-CV-05783-AMD-JAM<br><br>This document relates to:<br>All Consolidated Actions |

**JOINT STATUS REPORT**

Pursuant to this Court's Minute Entry on September 29, 2026, Plaintiffs Derrick Riley, Ben Tal, Victor Torres-Velez, Amber Albright, and James Pollard ("Plaintiffs"), and Defendants Huel Inc. and Huel Ltd. (collectively, "Huel") hereby file their Joint Status Report.

## I. Current Status of Discovery

The parties have made substantial progress on document discovery.

Since the last joint status report, Huel made its fourth production of documents on September 23, 2026 and its fifth production of documents on September 29, 2026. Plaintiffs made their third production of documents on September 28, 2026. The parties continue to produce documents on a rolling basis.

The parties have noticed depositions and are conferring regarding the dates and subjects of those depositions. In particular, on August 25, 2026, Huel served notices of deposition to the currently and previously named Plaintiffs. On September 3, 2026, Plaintiffs served Rule 30(b)(6) deposition notices on Huel Inc. and Huel Ltd. On September 25, 2026, Plaintiffs issued notices of depositions to Cassandra Hards, Harriet Hill, Lee Boakes, Ian Wynne, and Jose Ferreira.

The parties have had multiple meet and confers, including on Zoom, by exchanging formal letters, and over email. Most recently, the parties participated in substantive Zoom meet and confers on:

- September 1, 2026 from 12-12:18 pm: the parties discussed depositions of Plaintiffs;

- September 16, 2026 from 11:00am-1:23 pm: the parties discussed the subjects of document discovery, search terms, ESI, and depositions;
- October 1, 2026 from 11:30am-12:47 pm: the parties discussed depositions of Plaintiffs; the subjects of document discovery; and search terms.

The parties have also exchanged formal letters on July 17, 2026, August 11, 2026, August 25, 2026, August 27, 2026, September 3, 2026, September 21, 2026, and September 23, 2026, as well as a significant number of emails.

The parties' meet and confers have substantially narrowed the disputes between the parties. The parties raise here only those issues on which they have not been able to reach an agreement: Section II sets forth Huel's statement regarding disputed issues, and Section III sets forth Plaintiffs' statement regarding disputed issues.

## II. Huel's Statement Regarding Disputed Issues

Huel makes plant-based, protein-rich foods and supplements, including, Black Edition, Original Powder, and Daily Greens (the "Products"). Like virtually all plant-based products, they unavoidably contain trace amounts of heavy metals. The Products comply with all applicable federal and state regulations regarding heavy metals, and no federal or state agency has found that the products should bear any warning or disclosure regarding their heavy metal content, which is lower than other common foods like apples, sweet potatoes, or chocolate.

Plaintiffs accuse Huel of false advertising without identifying any false statement. There is no dispute that Huel's labels make no express claim about heavy metals. There is also no dispute that Huel's products contain trace amounts of naturally occurring heavy metals. What is disputed is that Plaintiffs could have believed the Products were completely free from heavy metals based on label or advertising statements that have nothing to do with heavy metal content. Plaintiffs' testimony and documents concerning their purchasing behavior are relevant to the only disputed facts.

### A. Plaintiffs Must Appear for their Depositions

17 of the 22 plaintiffs refuse to appear for depositions. Although these individuals are no longer named plaintiffs in the operative complaint, they remain members of the class, have not withdrawn their claims, and have relevant knowledge by virtue of the fact that they chose to make a federal case about Huel's labels. Huel is entitled to take their depositions.

Each of these individuals "freely chose to participate" in this lawsuit and "each . . . has relevant information with respect to the claims and defenses in this action." *Krueger v. New York Tel. Co.*, 163 F.R.D. 446, 449 (S.D.N.Y. 1995). Courts routinely allow class action defendants to depose members of putative class actions. *See Clark v. City of New York*, 2022 WL 17496225, at *3 (S.D.N.Y. Dec. 8, 2022) (permitting depositions of fifty absent class members); *In re Warner Chilcott Ltd. Sec. Litig.*, 2008 WL 344715, at *2 (S.D.N.Y. Feb. 4, 2008) (permitting depositions of "at least thirty absent class members").

Here, Huel does not seek to depose mere absent class members, but actual plaintiffs in the underlying actions. *Hu v. BMW of N. Am. LLC*, 2022 WL 13837791, at *3 (D.N.J. Oct. 21, 2022) (former named plaintiffs "are not ordinary, absent class members"). In an effort to compromise, Huel proposed to begin with depositions of the named plaintiffs and three previously named plaintiffs, and revisit whether additional depositions are necessary once those depositions are complete; Plaintiffs rejected this proposal.

Additionally, Plaintiffs should be deposed in the forum they chose—New York. *Eletson Holdings Inc. v. Levona Holdings Ltd.*, 2025 WL 1950728, at *1 (S.D.N.Y. July 16, 2025) (plaintiff "selected the forum and thus has consented to participating in proceedings there"). Huel understands that Plaintiffs Pollard, Tal, and Torres-Velez will appear in New York, and the parties have agreed that Mr. Riley will be deposed in San Francisco. As for Ms. Albright, if she is able to appear in New York, she should be required to do so; if her caregiving obligations do not allow her to do so, Huel will make an accommodation, but notes that her inability to participate in litigation in this forum calls into question her adequacy as a named plaintiff.

**B. Plaintiffs Must Produce Documents Reflecting their Purchasing Behavior**

Plaintiffs refuse to produce documents showing their consumption of foods known to contain heavy metals. Plaintiffs' consumption habits are routinely subject to discovery in food labeling cases, and are relevant to what plaintiffs understood Huel's labels to mean and whether Plaintiffs actually care about heavy metals in the food supply.

Plaintiffs have agreed only to produce their purchase histories for other protein powders and ready-to-drink shakes, chocolates, spinach, and vegan or plant-based alternative products. Plaintiffs have no basis to cherry pick the products they will produce—they should produce available purchase histories through online grocery accounts like Amazon Fresh, grocery stores that retain purchase history online through an account (e.g., Whole Foods), loyalty or reward membership cards (e.g., Target), club memberships (e.g., Sams Club), or subscription-based services (e.g., Blue Apron). Such records are readily available with minimal effort.

Plaintiffs' refusal to produce documents is impacting Huel's ability to proceed with depositions ahead of the fact discovery deadline. Last week, Huel was forced to postpone its deposition of Plaintiff Pollard because Plaintiffs have not produced the documents necessary for Huel to efficiently and thoroughly depose Mr. Pollard, such as the receipt for his June 2025 purchase of Huel Black Edition that serves as the purported basis of his inclusion in the class.

**C. All Plaintiffs Must Respond to Discovery**

Plaintiffs have responded to discovery only on behalf of the five currently named Plaintiffs. Recently, Plaintiffs agreed to produce purchase receipts and testing results for the Products on behalf of all Plaintiffs. This is insufficient. Each plaintiff should be required to fully participate in discovery as they "freely chose to participate" in this suit and "ha[ve] relevant information with respect to the claims and defenses in this action." *Krueger*, 163 F.R.D. at 449. Plaintiffs' refusal is particularly questionable here, where Huel's requests are minimally burdensome and require, for example, Plaintiffs to merely export available online grocery purchase histories.

**D. Plaintiffs Seek Irrelevant and Overbroad Discovery**

While Plaintiffs have tried to shield their documents from discovery, they improperly seek to expand the scope of discovery by imposing on Huel burdensome demands for documents that have nothing to do with this case. Huel already agreed to produce the documents that are actually relevant to this litigation, including its advertisements, labels, and documents surrounding the tests for heavy metals that Huel conducted on Products. Plaintiffs' efforts to expand discovery goes well beyond what Rule 26 permits.

**Advertising claims unrelated to heavy metals.** Plaintiffs' allegations concern the alleged presence of heavy metals in the Products. Huel has already produced all advertisements and all labels for the Products. Huel has also agreed to produce its internal communications surrounding the advertisements and labels for the Products, to the extent such discussions relate to heavy metals. Plaintiffs, however, improperly seek discovery on every single communication concerning every single advertisement for the Products. Plaintiffs contend, for example, that because Huel

advertised its Products as "healthy" and "nutritious", Plaintiffs' are entitled to every scrap of paper regarding those claims—even though the *only* aspect of those claims Plaintiffs' allege is false relates to the presence of trace amounts of heavy metals. To the extent such internal documents or communications address the presence or absence of heavy metals in the Products, they will be produced. But without any connection to heavy metals, such documents do not relate to Plaintiffs' claims (i.e., that these advertising statements are false because of trace amounts of heavy metals) and are thus irrelevant.

**Heavy metals testing of ingredients**. Huel also agreed to produce the test results for the Products, as well as documents that discuss those results. Plaintiffs seek to expand discovery by demanding that Huel also produce documents relating to testing of the ingredients within each product and communications with suppliers concerning ingredient testing. Plaintiffs assert that such communications and testing are relevant to their allegations that "Huel assures consumers that it 'uphold[s] the highest standards, with rigorous ingredient testing.'" But Plaintiffs do not allege that Huel actually employs low quality standards or that its testing is insufficiently rigorous. Rather, as with Plaintiffs' other advertising claims, the *only basis* on which Plaintiffs assert those claims are false is that the Products contain trace amounts of heavy metals. There is thus no justification to expand discovery beyond the alleged presence of the heavy metals in the Products themselves. Plaintiffs also assert that documents concerning ingredient testing are relevant to Huel's defense that heavy metals are naturally occurring and prevalent in plant-based foods. But Plaintiffs do not, and cannot, allege that other plant-based foods are free of heavy metals. As the FDA has repeatedly stated, "it is not possible to completely prevent lead from entering the food supply," and a wide range of common foods contain heavy metals—including rice, chocolate, spinach, carrots, and sweet potatoes. (*Lead in Food and Foodwares*, U.S. Food and Drug Administration, (Jan. 6, 2025).) To the extent Plaintiffs intend to challenge the findings of the FDA and countless actual experts, that will have to be done via expert testimony. There is no basis for Plaintiffs to expand the scope and burden of discovery to include expansive information about ingredients or suppliers that has no relevance to any claim or defense.

**III. Plaintiffs' Statement Regarding Disputed Issues**

**Discovery Served on Plaintiffs: Discovery of Absent Class Members is Inappropriate**

Without seeking leave of Court, in contravention of the Federal Rules, Defendants issued deposition notices for 22 absent class members to appear for deposition and produce documents at defense counsel's New York office. Defendants' assertion that the former plaintiffs have not withdrawn their claims is wrong as they no longer assert individual claims in the current Complaint. Defendants' purported purpose is to inquire into: "their purchase and use of the Products, the reasons they are no longer named, and the typicality and adequacy of the current proposed class representatives, among other things." Plaintiffs offered to search for and produce purchase records for Huel products and heavy metal testing for these former plaintiffs, which Defendants rejected. Plaintiffs nevertheless produced these documents in their possession.

Discovery of absent class members is disfavored. *See Teachers' Ret. Sys. of Louisiana v. ACLN Ltd.*, 2004 WL 2997957, at *10 (S.D.N.Y. Dec. 27, 2004). Defendants have not satisfied the "four factors relevant" to justify discovery of absent class members: "whether the discovery: 1) is needed for trial or issues common to the class; 2) is narrowly tailored; 3) will impose an undue burden on absent class members; and 4) is not available from representative plaintiffs." *Id.* "[T]he burden on the defendant to justify discovery of absent class members by means of deposition is particularly heavy." *Redmond v. Moody's Inv. Serv.*, 1995 WL 276150, at *1 (S.D.N.Y. May 10, 1995). Defendants have not shown discovery of absent class members is necessary or relevant to class-wide issues, that any absent class members possess common evidence the named Plaintiffs lack, or that their "knowledge about class-wide issues is superior to that of the named plaintiffs." *Id.* at *2. That these individuals had previously been plaintiffs does not make their testimony relevant or necessary. *See In re OpenAI, Inc., Copyright Infringement Litig.*, 2025 WL 2846692, *2-3 (S.D.N.Y. Oct. 8, 2025) (denying depositions of former plaintiffs where defendant failed to identify "what information" would be "unique" and "unavailable from any of the named class plaintiffs"). Defendants' cases are not remotely comparable to the circumstances of this case or what Defendants now seek. *See, e.g., Clark*, 2022 WL 17496225, at *3-4 (for religious

discrimination claim, allowing 1.5 hours of remote deposition, but noting even limited depositions of absent class members is "rare"); *Rosen*, 1994 WL 652534, at *3-4 (enabling depositions to seek anecdotal pattern-or-practice evidence for age-discrimination claims); *Krueger*, 163 F.R.D. 446-49 (allowing depositions of absent employee in age-discrimination class action); *Hu*, 2022 WL 13837791, at *1 (allowing inspection of cars prior to disposal in automotive-defect class action); *In re Warner Chilcott Ltd. Sec. Litig*., 2008 WL 344715, at *2 (allowing depositions plaintiffs did not oppose of absent class members who attended pre-IPO presentation of the company and thus had unique knowledge). In contrast, this case involves uniform misrepresentations to the class and these absent class members do not have information that is not available to Defendants from the current named plaintiffs. The discovery is purely for harassment.

**Depositions at Defense Counsel's Preferred Location is Unduly Burdensome**

Defendants demanded the 22 non-parties and five named Plaintiffs appear at their New York office. In response, counsel agreed to produce Plaintiffs Pollard, Tal, and Torres-Velez for depositions in New York on October 2, 12, and 29, respectively. Defense counsel confirmed Pollard's deposition and issued an amended notice for October 2. Pollard arranged time off and travel from Washington State to be deposed in New York. Days before his deposition, Defendants unilaterally canceled it, purportedly because his documents had not been produced in full. Other than a single receipt (which would be reflected in Defendants' records and is now produced), Plaintiffs confirmed that they had produced documents to which they had not previously objected. Defendants were on notice of the objections when they noticed Pollard's deposition.

The other two Plaintiffs—Amber Albright and Derrick Riley—objected to the unnecessary travel on the basis of burden and offered to appear via video or in-person in the cities where they reside. Albright is located in Illinois, where she originally filed suit, and it would unduly burden her to travel to New York because her husband recently underwent surgery and such travel would interfere with her caregiving duties. Because Riley lives in Los Angeles and cross-country travel would be unduly burdensome relative to his claim, he offered to be deposed in San Francisco where defense counsel has an office. Defendants have not explained why they would be prejudiced

by proceeding remotely for Albright; instead, asserting they are entitled to require Plaintiffs (current and former) to travel to New York. Courts frequently recognize that parties should be deposed where they are located.[1] Plaintiffs, who originally filed suit in different venues, elected to proceed in this District because Huel, Inc. is headquartered here but this does not give Defendants an unassailable right to require them to appear for deposition here. *See Mill-Run Tours, Inc. v. Khashoggi*, 124 F.R.D. 547, 550 (S.D.N.Y. 1989) (no presumption for location of depositions where plaintiff had little choice in choosing forum); *Silva Run Worldwide Ltd. v. Gaming Lottery Corp.*, 2003 WL 23009989, at *1 (S.D.N.Y. Dec. 23, 2003). Given the size of the individual claims and Defendants' failure to articulate why a video deposition would be inadequate or prejudicial, requiring all to appear in person in New York is unreasonable.[2]

**Food History for Every Morsel Consumed over Four Years is Irrelevant and Harassing**

Defendants seek documents evidencing every morsel of food the five Plaintiffs and 22 absent class members have consumed, demanding four years of food-purchase histories. But the claims arise from Defendants' deceptive marketing of Huel products, and unrelated food purchases are not relevant. Production of a  food purchase history "is not only unduly burdensome, it is harassing." *Orrico v. Nordic Nats., Inc.*, 2025 WL 4961256, at *5-6 (E.D.N.Y. Mar. 21, 2025) ("[D]efendant's request for a laundry list of plaintiff's purchases of a variety of products over the past six years, including from other companies and of purchases not even made, only considered, is overbroad and not proportional to the needs of the case."). Because Plaintiffs' claims are based only on Huel products, "it is immaterial whether plaintiff consistently followed a pattern of only purchasing products with" similar representations or omissions. *Id.* (narrowing discovery request as to purchase history of defendant's own products). While Defendants grossly downplay the

---

[1] *McArthur v. Rock Woodfired Pizza & Spirits*, 318 F.R.D. 136, 139 (W.D. Wash. 2016) ("as a general rule, the location of a deposition is determined by the residence or place of business of the deponent, not on the location of the court"); *Culver v. Wilson*, 2015 WL 1737779, at *3 (W.D. Ky. Apr. 16, 2015).

[2] *See, e.g.*, *Zito v. Leasecomm Corp.*, 233 F.R.D. 395, 398 (S.D.N.Y. 2006) ("[I]t would be a hardship for many of the [ ] plaintiffs to travel to distant cities to be deposed on claims that in some instances have very modest monetary value. By contrast, there is little prejudice to the defendants, who would also save expenses by taking these depositions telephonically. . . [if] defendants consider it important to view the demeanor [], the[y] may conduct the examination by videoconference provided that they bear the expense").

burden of requiring Plaintiffs to search every establishment at which they shopped for any food item in person or online for four years; it is a heavy undertaking for largely irrelevant records that could be asked about at depositions.

**Discovery Served on Defendants**:[3] **Discovery Extends Beyond Mention of Heavy Metals**

Discovery extends to, at minimum, documents concerning the misrepresentations alleged in the Complaint, Defendants' marketing of the Products, and Defendants' efforts to substantiate the challenged statements on the packaging and website. Defendants are wrong that the absence of the words "heavy metals" makes a document irrelevant. Plaintiffs allege Defendants market the Products "as healthy, nutritious alternatives and/or supplements to traditional meals," and assure consumers "science and nutrition are at the heart of what we do at Huel, so it's pretty important that we walk the walk when it comes to talking about how healthy Huel is." ¶¶1-2. Defendants' Answer asserts "Huel's products are safe." Defendants' documents are critical to establishing reasonable consumer understanding even if they do not mention heavy metals.

**Heavy Metal Testing for Ingredients and Supplier Communications Should Be Produced**

Defendants contend they need only produce heavy metal testing for final products. Plaintiffs maintain Defendants must produce ingredient-level test results and supplier communications about the ingredients, issues squarely raised in the Complaint. Plaintiffs allege Huel promises "rigorous ingredient testing" and production in facilities meeting the "strictest quality standards," "routine testing" for heavy metals, and supplier visits as part of its procurement process. ¶¶2-4. And Defendants' Answer asserts the Products "are manufactured to rigorous quality standards." Because these statements are at the heart of Plaintiffs' deception claims, discovery into ingredient testing and supplier communications is relevant and proportional. It is also relevant to Defendants' defense that heavy metals are ubiquitous and uncontrollable, since Plaintiffs allege Defendants could manufacture the Products without heavy metals. ¶¶ 183-188.

---

[3] The parties are negotiating search terms and will update same upon this motion's resolution.

**IV. Mediation or Settlement Conference**

The parties have not engaged in any settlement negotiations since the last conference. On September 23, 2026, upon entry of the Protective Order, Huel produced sales data. Plaintiffs' initial review indicates that additional sales data may exist that has not yet been produced, and Plaintiffs reserve all objections until such documents can be reviewed more substantively. Plaintiffs are in the process of reviewing Huel's sales data to inform substantive discussions toward settlement. Huel disagrees that sales data is relevant to any purported harm that any Plaintiff incurred.

Dated: October 5, 2026

Respectfully submitted,

*/s/ David H. Kwasniewski*
David H. Kwasniewski, Esq.
**BRAUNHAGEY & BORDEN LLP**
747 Front Street, 4th Floor
San Francisco, CA 94111
Tel: (415) 599-0210
Fax: (415) 276-1808
kwasniewski@braunhagey.com

Marissa R. Benavides
Jeremy Andrew Cohen
**BRAUNHAGEY & BORDEN**
200 Madison Avenue, 23rd Floor
New York, NY 10016
Telephone: (646) 829-9403
Facsimile: (646) 403-4089
benavides@braunhagey.com
jcohen@braunhagey.Com

*Counsel for Huel*

*/s/ Jennifer Sarnelli*
Jennifer Sarnelli
**GRANT & EISENHOFER P.A.**
485 Lexington Avenue – 29th Floor
New York, NY 10017
Telephone: (646) 722-8500
Facsimile: (646) 722-8501
jsarnelli@gelaw.com

***Plaintiffs' Interim Executive Committee member***

Janine Pollack
**HECHT PARTNERS, LLP**
125 Park Avenue, 25th Floor
New York, NY 10017
Tel: (212) 851-6821
Fax: (888) 421-4173
jpollack@hechtpartners.com
eServicecapg@hechtpartners.com

Stephen A. Weiss
Justin M. Smigelsky
**SEEGER WEISS LLP**
55 Challenger Road, 6th Floor
Ridgefield Park, New Jersey 07660
Telephone: (973) 639-9100
Facsimile: (973) 639-9393
sweiss@seegerweiss.com
jsmigelsky@seegerweiss.com

Jason P. Sultzer
**SULTZER & LIPARI, PLLC**
85 Civic Center Plaza, Suite 200
Poughkeepsie, New York 12601
Tel: (845) 483-7100
Fax: (888) 749-7747
sultzerj@thesultzerlawgroup.com

***Plaintiffs' Interim Co-Lead Counsel***

Raphael Janove
**JANOVE PLLC**
500 7th Ave., 8th Fl.
New York, NY 10018
Raphael@Janove.Law

Liana Vitale
**JANOVE PLLC**
979 Osos St., Ste. A5
San Luis Obispo, CA 93401
Liana@Janove.Law

Kelly L. Tucker (*pro hac vice*)
**GRANT & EISENHOFER P.A.**
123 Justison Street
Wilmington, DE 19801
Telephone: (302) 622-7000
Facsimile: (302) 622-7100
ktucker@gelaw.com

Charles E. Schaffer (*pro hac vice*)
**LEVIN SEDRAN & BERMAN**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: (215) 592-1500
Fax: (215) 592-4663
cschaffer@lfsblaw.com

***Plaintiffs' Interim Executive Committee***